## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE: HILCORP ENERGY                                    CIVIL ACTION
COMPANY
                                                         NO. 22-2686

                                                         SECTION "B"(1)

### ORDER & REASONS

Before the Court are petitioner Hilcorp Energy Company's motion for partial summary judgment (Rec. Doc. 19), claimant Matthew Delahoussaye's opposition (Rec. Doc. 23), petitioner's reply (Rec. Doc. 27), and claimant's sur-reply (Rec. Doc. 30). For the following reasons,

**IT IS HEREBY ORDERED** that petitioner's motion for partial summary judgment is **DENIED**.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This matter centers on an allision by the M/V MS. VANESSA ("MS. VANESSA") in the navigable waters of Plaquemines Parish, Louisiana on December 1, 2021. *See* Rec. Doc. 1 at 4 (petitioner's complaint and petition for exoneration from or limitation of liability); Rec. Doc. 7 at 10 (claimant's answer, affirmative defenses, and claim); Rec. Doc. 23-1 at 3 ¶1 (claimant's response to petitioner's uncontested facts (Rec. Doc. 19-5)) (correcting date). Petitioner Hilcorp Energy Company ("Hilcorp") owned the MS. VANESSA, which was being operated by its employee and litigation-claimant Matthew Delahoussaye ("Delahoussaye") at the time of the allision. *See* Rec. Doc. 1 at 1–2; Rec. Doc. 7 at 9–10. Delahoussaye contends the allision with "an unmarked, unlit wellhead owned and/or otherwise under the custody and control of [Hilcorp]" resulted from the unseaworthiness of Hilcorp's vessels and his employer's negligence. Rec. Doc. 7 at 10–11 (alleging that Hilcorp was "the sole and proximate cause of the accident and his

1

injuries" and that Delahoussaye "was in no manner negligent"); *see also* Rec. Doc. 14 (petitioner's counter-claim) ("Hilcorp Energy Company was the owner. . . of a structure located in the South Pass Block 24 in Venice, Louisiana bearing State Lease #2484, Well #20, Serial #80774.").

On the night in question, Delahoussaye, an operator with fifteen years of employment with Hilcorp, was tasked by his supervisor to open two company wells. *See* Rec. Doc. 23-1 at 3–4, ¶¶ 2, 9. Another crew member was present, but Delahoussaye alone made the trip on the MS. VANESSA. *See id.* at 4, ¶¶ 11–12. The conditions at the time "were clear and calm." *Id.* at 4, ¶ 10. After opening the first well and while en route to the second, Delahoussaye received a telephone call from his supervisor, leading him to idle the boat. *See id.* at 5, ¶¶ 15–16. After the call's conclusion, Delahoussaye engaged the throttle "without looking in front of him or visually examining his surroundings." Rec. Doc. 19-5 at 3, ¶ 19; Rec. Doc. 23-1 at 5–6, ¶ 19 (contesting petitioner's account but only "insofar as Mr. Delahoussaye's operation of the vessel at the time of the allision does not absolve Hilcorp from negligence"). While looking down at the radar screen, Delahoussaye allided the MS. VANESSA with a Hilcorp wellhead "at an estimated speed of 10 to 15 miles per hour." Rec. Doc. 19-5 at 3, ¶ 20; Rec. Doc. 23-1 at 6, ¶ 20 (contesting petitioner's account for the same negligence-related reasons as in previous). At the time of the incident, MS. VANESSA and its equipment were in functioning order, with radar failing to indicate the wellhead due to its closeness. *See* Rec. Doc. 19-5 at 3, ¶ 25, 22; Rec. Doc. 23-1 at 7, ¶ 25, at 6, ¶ 22 (contesting petitioner's account for the same negligence-related reasons as in previous). Delahoussaye testified that fatigue did not cause the accident. *See* Rec. 19-2 at 49 ("Q. How did being tired cause you to hit the wellhead? A. That don't have nothing to do with it.").

As a result of the accident, Delahoussaye asserted the following injuries: "herniated and/or ruptured discs and nerve damage, as well as other injuries to his bones, muscles and joints, organs

and tissues among other component parts of his head, back, ribs, legs, feet, and hands." Rec. Doc. 7 at 11–12. He initially brought an action in Louisiana state court against Hilcorp, *see* Rec. Doc. 1 at 4, but after Hilcorp's timely limitation action, Delahoussaye filed his claims of negligence, unseaworthiness, and maintenance and cure in federal court, *see* Rec. Doc. 7 at 8–14. Among the various negligence theories asserted, Delahoussaye contends Hilcorp breached its duty of reasonable care, failed to warn of and correct unsafe conditions, and failed to "provide competent and adequate supervisory authority." *Id.* at 11. Hilcorp, in turn, filed a counter-claim of negligence against Delahoussaye for "substantial damages" done to the MS. VANESSA and the allided-with wellhead. *See* Rec. Doc. 14 at 2. Hilcorp now moves for partial summary judgment on the negligence and unseaworthiness claims, seeking exoneration from liability or, in the alternative, limitation of liability. Rec. Doc. 19.

## II.   LAW AND ANALYSIS

### A.  Motion for Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986). However, even if not accompanied by an affidavit, material in support or opposition of a motion for summary judgment may be considered as long as it is "*capable* of being 'presented in a form that would be admissible in evidence.'" *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (emphasis in original) (quoting Fed. R. Civ. P. 56(c)(2)). Courts view all facts and evidence in the light most favorable to the non-moving party, but "refrain from making credibility determinations or

weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).

Where the movant bears the burden of proof, it must "demonstrate the absence of a genuine issue of material fact" using competent summary judgment evidence. *Celotex*, 477 U.S. at 323. However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Should the movant meet its burden, the burden shifts to the non-movant, who must show by "competent summary judgment evidence" that there is a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Lindsey*, 16 F.3d at 618. Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *See Bargher v. White*, 928 F.3d 439, 444–45 (5th Cir. 2019). There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law. *See Smith v. Amedisys,* 298 F.3d 434, 440 (5th Cir. 2002).

### B. Hearsay Objections to Summary Judgment Materials

Before addressing the merits of Hilcorp's motion for partial summary judgment, it is necessary to assess what evidence is properly before the Court. Specifically, Hilcorp objects to five of Delahoussaye's exhibits. *See* Rec. Doc. 27 at 2 (challenging an excerpt from the Hilcorp safety manual; written summary of a verbal statement from Delahoussaye's supervisor, Zachary Caparros; attachments to expert Ronald Campana's declaration; an email from Hilcorp-identified witness James McMichael; and the Hilcorp incident report.). Hilcorp broadly contends that each exhibit is "inadmissible hearsay which cannot serve as a basis to defeat summary judgment." *Id.* at 1–2 (providing as the ground for each objection "FRE 802/hearsay"). Delahoussaye counters

that Hilcorp primarily relies on caselaw which predates the 2010 amendment of Federal Rule of Civil Procedure 56(c), now offering "flexibility" to the district court "to consider the evidence that would likely be admitted at trial . . . without imposing on parties the time and expense it takes to authenticate everything in the record." Rec. Doc. 30 at 2 (quoting *Maurer v. Independence Town*, 870 F.3d 380, 384 (5th Cir. 2017)).

The Fifth Circuit Court of Appeals has clarified that the threshold issue for motion for summary judgment support is not current trial admissibility but the material's capability of being admissible. *See LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)(2)); *see also Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017), *as revised* (July 5, 2017) ("Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . ., the material may be presented in a form that would not, in itself, be admissible at trial." (citation omitted)). The court may consider even "otherwise inadmissible materials" where the proponent substantiates "that it will be possible to put the information . . . into admissible form." *Lee*, 859 F.3d at 355 (citation omitted). Such substantiation occurs through affidavit support, but also now through "documents, electronically stored information, . . . . or other materials." Fed. R. Civ. P. 56(c)(1)(A). Therefore, denial of commonly proffered trial exhibits over technical authentication concerns is improper. *See LSR Consulting, LLC*, 835 F.3d at 533–34 (affirming district court's consideration of unauthenticated default notices by bank and, thus, its denial of motion for summary judgment); *Lee*, 859 F.3d at 354–55 (vacating order granting summary judgment and remanding case due to district court's refusal to consider a signed but unsworn expert report); *Maurer*, 870 F.3d at 384 (finding abuse of discretion where district court failed to consider an unsigned contract as support for summary judgment).

5

In response to Hilcorp's generalized objections, Delahoussaye specifically provides grounds for the capability of admissibility of all submitted exhibits. *See* Rec. Doc. 30 at 2–9. The Court agrees, pursuant to cited Fifth Circuit directives, to consider the objected-to materials. Addressing the simplest first, expert Ronald Campana's report not only is signed and of an admissible type, but it also is accompanied by an explicit declaration: "The attached report accurately sets forth the factual materials I relied upon and my opinions related to this case. I declare under penalty of perjury under the law of the United States of America that the foregoing it [sic] true and correct." Rec. Doc. 23-4 at 1.

Both Hilcorp's safety manual (Rec. Doc. 23-2) and the summarized statement from Delahoussaye's supervisor (Rec. Doc. 23-3) were produced by Hilcorp during discovery and have the capability of admissibility. For the safety manual, the business-records exception of Federal Rule of Evidence 803(6) likely applies; for the statement, the non-hearsay exclusion as made by an employee of the opposing party pursuant to Federal Rule of Evidence 801(d)(2)(D) makes it capable of admissibility. Further, Delahoussaye's supervisor is listed as witness by both parties, providing an even clearer route for authentication. *See* Rec. Docs. 21 at 1; 22 at 2. Similarly, James McMichael, the apparent author of the objected-to email (Rec. Doc. 23-8), is listed on Hilcorp's witness list. *See* Rec. Doc. 21 at 2. The email itself is sent from a "hilcorp.com" email address, bearing signs of authenticity. Delahoussaye cites as support Judge Fallon's opinion in *Progressive Waste Solutions of Louisiana, Inc. v. St. Bernard Parish Government*, which considered emails, in the summary judgment context, as self-authenticating due to distinctive characteristics like domain address, signature line, time period, and relevant case facts. *See* Rec. Doc. 30 at 9 (quoting *Progressive Waste Sols. of La, Inc. v. St. Bernard Par. Gov't*, No. 16-15830, 2017 WL 6501597, at *3 (E.D. La. Dec. 19, 2017)). More pertinent to our consideration, Judge Fallon also found the

emails admissible under Federal Rule of Evidence 801(d)(1)–(2) or Rule 803(6). *Progressive Waste Sols. of La, Inc.*, 2017 WL 6501597, at *3. We agree that the Rule 801(d) hearsay exclusion likely applies to the Hilcorp employee's email.

However, the Hilcorp Incident Report presents a closer question. Delahoussaye, without further explanation, argues that the report "may be considered a business record." Rec. Doc. 30 at 8 (citing *Basil v. Dow Chem. Co.*, No. 19-4, 2020 WL 1964155, at *5–6 (M.D. La. Apr. 23, 2020) ("'Near miss' report was business record because it was 'a report of roadway conditions made at or near the time' of the event by a person who observed the conditions as part of the 'course of a regularly conducted business activity.'")). Further, Delahoussaye sandwiches his Middle District of Louisiana case citation with an apparent concession: "The claimant asserts that the time of the accident can be established at trial through other means, such as the testimony of witnesses . . . . The claimant respectfully asserts that the time of the accident can be established by other means at trial, and such testimony will also show that the petitioner maintained such reports as a regular practice of its business activity." Rec. Doc. 30 at 8. Where a party only "baldly asserts" an incident report meets the business-records exception to hearsay, it is inadmissible at trial. *See Chapman v. Ensco Offshore Co.*, 463 F. App'x 276, 279 (5th Cir. 2012). As discussed previously, however, the measure for summary judgment consideration is the material's capability of being admissible. *See LSR Consulting, LLC*, 835 F.3d at 534. Dated December 2, 2021, the incident report was made contemporaneously with the incident and indicates its use as "Internal Reporting." Rec. Doc. 23-6 at 1. Therefore, it may be capable of being admissible pursuant to the business-records exception of Federal Rule of Evidence 803(6), and we will consider it for purposes of this motion for partial summary judgment.

### C.  Limitation of Liability

The Limitation of Liability Act permits a shipowner, lacking in privity or knowledge, to limit liability for damages arising from a maritime accident to the value of the vessel involved in the accident. *SCF Waxler Marine, L.L.C. v. Aris T M/V*, 24 F.4th 458, 472 (5th Cir. 2022). Specifically, the Act provides that "the liability of the owner of a vessel for any claim, debt, or liability . . . shall not exceed the value of the vessel and pending freight", with liabilities described as "any loss, damage, or injury by collision, or any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of the owner." 46 U.S.C. § 30523. A shipowner can assert the right to limitation of liability in two ways: (1) by filing a pre-emptive petition for limitation of liability pursuant to 46 U.S.C. § 30529, or (2) by pleading limitation of liability as a defense in the answer to an existing complaint pursuant to 46 U.S.C. § 30523. *Signal Oil & Gas Co. v. Barge W–701,* 654 F.2d 1164, 1173 (5th Cir. 1981); *Karim v. Finch Shipping Co.,* 265 F.3d 258, 263 (5th Cir. 2001).

In evaluation of a shipowner's limitation, the court performs a two-step process. *Farrell Lines Inc. v. Jones*, 530 F.2d 7, 10 (5th Cir. 1976). First, as a burden on the claimant, the court assesses whether negligence or unseaworthiness caused the alleged injury. *Id.* If the claimant successfully so proves, second, the petitioner has the burden to prove it lacked privity or knowledge of the negligence or unseaworthiness. *Id*. Exoneration of the shipowner is appropriate only if the claimant fails at the first step, that is, the "[o]wner, his vessel and crew must be shown to have been free from fault." *Tittle v. Aldacosta*, 544 F.2d 752, 755 (5th Cir. 1977). However, if the injury-causing event is at least partially caused by the owner, vessel, or crew, exoneration is not proper. *See In re Omega Protein, Inc.*, 548 F.3d 361, 370–71 (5th Cir. 2008) (affirming, in a limitation proceeding, district court's finding of 50% comparative fault to platform owner where allision occurred with unlit platform).

8

In this burden-shifting cause of action, Delahoussaye has the burden at the initial negligence–unseaworthiness stage. As the non-movant bears the trial burden at this first step, Hilcorp need only point to an absence of evidence to succeed in its partial summary judgment. *See Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Nonetheless, with evidence viewed in a light most favorable to Delahoussaye, Hilcorp fails to point to an absence of genuine issues of material fact at the negligence–unseaworthiness stage.

### 1.  **Negligence**

Delahoussaye makes his claim against his employer pursuant to the Jones Act (46 U.S.C. § 30104) and general maritime law. *See* Rec. Doc. 7 at 10. Under the Jones Act, a seaman has a cause of action similar to common law negligence against his employer.[1] *See Jones v. United States*, 936 F.3d 318, 322 (5th Cir. 2019). The duty of care owed by the employer is one that "retains the usual and familiar definition of ordinary prudence." *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir. 1997). From the opposite perspective, then, a seaman is "obligated under the Jones Act to act with ordinary prudence under the circumstances." *Id.* at 339. A seaman's comparative fault or negligence proportionally reduces—but does not bar—his recovery. *See Jauch v. Nautical Servs., Inc.*, 470 F.3d 207, 213 (5th Cir. 2006); *see also Tittle v. Aldacosta*, 544 F.2d 752, 755 (5th Cir. 1977) ("[F]or the order of exoneration to survive appellate review [o]wner, his vessel and crew must be shown to have been free from fault.").

From this ordinary duty of care, the Jones Act employer has a duty to provide a reasonably safe place to work. *See Gautreaux*, 107 F.3d at 335. "This duty extends to areas over which the

---

[1] Although the duty and breach elements align with those in common law negligence, the causation element does not. Under the Jones Act, proximate causation exists if an employer's negligence played any part, no matter how small, in producing an injury. *Gavagan v. U.S.*, 955 F.2d 1016, 1018 (5th Cir. 1992); *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir. 1997) ("Under the Jones Act, seamen are afforded rights parallel to those of railway employees under the Federal Employers' Liability Act ('FELA')."); *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 705 (2011) ("Juries in [FELA] cases are properly instructed that a defendant railroad caused or contributed to a railroad worker's injury "if [the railroad's] negligence played a part—no matter how small—in bringing about the injury.").

employer has control." *Verrett v. McDonough Marine Serv.*, 705 F.2d 1437, 1441. This includes an employer's duty to inspect vessels and related objects over which it has control and to take reasonable precautions to protect its employees. *See Davis v. Hill Eng'g, Inc.*, 549 F.2d 314, 329 (5th Cir. 1977), *overruled on other grounds by Gautreaux*, 107 F.3d at 331. Nonetheless, "[a]ny failure of defendant to warn plaintiff of conditions of which he was, or should have been, aware would not be negligence on the part of the defendant." *Wimberly v. Harvey Gulf Int'l Marine, LLC*, No. 14-1208, 2015 WL 1416426, at *2 (E.D. La. Mar. 27, 2015); *see also Verrett*, 705 F.2d at 1441 (duty to warn found where location of barge was unknown to seaman travelling down canal at night); *In Re Omega Protein*, 548 F. 3d 361, 369–70 (5th Cir. 2008) (accepting the factual finding that the lack of lights "contribut[ed] to the allision" and determining that based on the night's visibility "if the platform's lights had been on, they would have been visible when [claimant] last scanned the horizon").

Parties' negligence debate focuses on the two poles of the incident: Hilcorp's sending out a possibly fatigued Delahoussaye on a nighttime operational task and Delahoussaye's allision with a possibly unlit wellhead owned by his employer. There are genuine issues of material fact regarding the wellhead's illumination.

Hilcorp contends that any question of Delahoussaye's fatigue during the night in question is resolved by the seaman's deposition testimony: "Q. How did being tired cause you to hit the wellhead? A. That don't have nothing to do with it." *See* Rec. Doc.19-1 at 12 (quoting Delahoussaye deposition (Rec. Doc. 19-2 at 49)). Without discounting his statement, Delahoussaye still argues Hilcorp breached its duty through its assignment of excessive work hours. *See* Rec. Doc. 23 at 14–15. With the exception of a three-hour break, Delahoussaye calculates that he "had been working from 3:00 a.m. to 11:00 p.m.—a period of 20 hours." *Id.* at

14. According to Delahoussaye's expert, "[n]o boat operator should operate a boat more than 12 hours in a 24-hour period[,] and Hilcorp should have been tracking his hours." *Id.* at 15 (quoting Expert Report of Ronald Campana (23-4 at 8)). However, Delahoussaye cites to no statute—for a negligence *per se* presumption—nor policy—for an apparent breach—nor caselaw to sustain the argument. Instead, the Court is left to analyze an employee who had fifteen years' experience, voluntarily responded to a supervisor's request, and later testified that fatigue played no part in the allision. Based on such facts, a reasonable jury could find comparative fault against plaintiff and defendant. *See Manderson v. Chet Morrison Contractors, Inc.*, 666 F.3d 373, 379 (5th Cir. 2012) (affirming district court's refusal to find employer negligence where Jones Act seaman remained on call twenty-four hours per day and voluntarily worked long hours).

Nonetheless, whether the allided-with wellhead was illuminated presents a material question upon parties' negligence and prevents summary disposition. Hilcorp finds only Delahoussaye to blame for the accident, concluding, "Based on the undisputed facts, the allision at issue was caused by Delahoussaye's own negligence in losing situational awareness while operating the MS. VANESSA and failing to act in a prudent manner once he completed his call with Zachary Caparros and attempted to complete his voyage." Rec. Doc. 19-1 at 10. It insists that the allided-with wellhead itself was illuminated, resting primarily on two inspections performed around ten months before the incident. *See id.* at 4 (citing affidavit by Hilcorp safety and health specialist (Rec. Doc. 19-3 at 2) and additionally pointing to the retrieval of the light by a dive team eight days after the allision; *see also* Rec. Doc. 14 (petitioner's counter-claim) ("Hilcorp Energy Company was the owner. . . of a structure located in the South Pass Block 24 in Venice, Louisiana bearing State Lease #2484, Well #20, Serial #80774.").

In contrast, Delahoussaye argues: "The fact that the light may have passed inspection in January of 2021 and February of 2021 does not establish that the light was operational on the evening of the accident on December 1, 2021—some ten to eleven months after those inspections." Rec. Doc. 23 at 19. In arguably contradictory fashion, he ultimately contends having no recollection of seeing a light before the allision: "Q. This structure that you hit, according to your statement you don't know if it had a light on it or not, do you? **A. I don't remember. I didn't see a light.** If I'd have saw a light, I wouldn't have hit it, believe me." *Id.* (quoting Delahoussaye's deposition (Rec. Doc. 23-5 at 2)) (Emphasis added). Finally, Delahoussaye relies on Fifth Circuit caselaw that refuses to find operator error for failure to use navigational aids where an allided-with object was unlit. *Id.* at 21 (quoting *In re Omega Protein*, 548 F. 3d 361, 369–70 (5th Cir. 2008)).

The Fifth Circuit considered a district court's finding of negligence for the owner of an allided-with oil platform. *In re Omega Protein*, 548 F. 3d at 365. Chiefly, parties debated whether the platform was illuminated at the time. *Id*. As in this case, the allision occurred on a clear night and with no record of recent maintenance confirming the light's functionality. *Id.* at 366. Although an inspection shortly after the allision found the lights in working order, the district court reasoned that the lights could have been repaired during the brief intervening period. *Id*. In affirming the district court's assignment of 50% liability for the platform owner, the Fifth Circuit found no error in the district court's factual finding that the lack of lights "contribut[ed] to the allision" and determination that based on the night's visibility "if the platform's lights had been on, they would have been visible when [claimant] last scanned the horizon." *Id.* at 369–70.

Similarly, the illumination of Hilcorp's wellhead presents a genuine issue of material fact. As the illumination is a debated factual question, summary judgment is improper.[2]

---

[2] As a genuine issue of material fact regarding Hilcorp's negligence exists, its reliance on the Oregon Rule is improper. The Oregon Rule creates a presumption that a vessel is at fault for an allision with a stationary object, but only in the

## 2. Unseaworthiness

Although a genuine issue of material fact on negligence grounds is sufficient for Delahoussaye to avoid a summary disposition, also present is an unseaworthiness ground. Under the general maritime law, the claim of unseaworthiness is "based on the vessel owner's duty to ensure that the vessel is reasonably fit to be at sea." *Beech v. Hercules Drilling Co., L.L.C.*, 691 F.3d 566, 570 (5th Cir. 2012) (quoting *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 441 (2001)). This duty on the owner is non-delegable and is "predicated without regard to fault or the use of due care." *Brister v. A.W.I., Inc.*, 946 F.2d 350, 355 (5th Cir. 1991) (citation omitted). To sustain the action, a claimant must establish "a causal connection between his injury and the breach of duty that rendered the vessel unseaworthy." *Jones v. United States*, 936 F.3d 318, 323 (5th Cir. 2019) (quoting *Jackson v. OMI Corp.*, 245 F.3d 525, 527 (5th Cir. 2001)). Examples of unseaworthiness include unsafe manner of work, defective machinery, equipment in disrepair, and an unfit crew. *Lett v. Omega Protein, Inc.*, 487 F. App'x 839, 844 (5th Cir. 2012) (first citing *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 499 (1971); then citing *Rogers v. Eagle Offshore Drilling Servs., Inc.*, 764 F.2d 300, 303 (5th Cir. 1985)). "Of course, to be inadequate or improperly manned is a classic case of an unseaworthy vessel." *Comeaux v. T. L. James & Co.*, 666 F.2d 294, 299 (5th Cir. 1982) (citation omitted).

Delahoussaye contends the MS. VANESSA's unseaworthiness arose from an understaffed crew. *See* Rec. Doc. 23 at 10. Specifically, his one-person operation was unfit for the nighttime task. To support the allegation, Delahoussaye quotes the Hilcorp Safety Program Policy &

---

absence of evidence of fault. *See In re Mid-S. Towing Co.*, 418 F.3d 526, 531 (5th Cir. 2005) (citation omitted) ("Evidentiary presumptions . . . are designed to fill a factual vacuum. Once evidence is presented . . . presumptions become superfluous because the parties have introduced evidence to dispel the mysteries that gave rise to the presumptions."). Where the stationary object is found to not have functional lights, for instance, the Oregon Rule is inapplicable. *See In re Omega Protein, Inc.*, 548 F.3d 361, 368 (5th Cir. 2008).

Procedures Manual, which requires a "buddy system," that is, "close proximity and visual contact" between multiple employees especially during "nighttime operations in hazardous areas." *Id.* at 10–11 (quoting Hilcorp Safety Program Policy & Procedures Manual (Rec. Doc. 23-2 at 2)). As Delahoussaye went about his nighttime well-opening tasks alone, he argues for an unseaworthiness finding. Further, he asserts the understaffed crew presents a causal connection to his suffered injury. Delahoussaye avers an additional employee would "be another set of eyes to spot the wellhead and . . . to handle a phone call Mr. Delahoussaye received just prior to the allision so that Mr. Delahoussaye was not distracted at the time of the allision." *Id.* at 12.

Hilcorp, in contrast, describes the unseaworthiness argument as a "proverbial 'Hail Mary.'" Rec. Doc. 19-1 at 15. Based on the clear and calm conditions and Delahoussaye's experience performing similar solo tasks, Hilcorp contends no additional crew was needed. *Id.* The employer also claims Delahoussaye to be undesirous of additional help: "Delahoussaye admittedly felt he could accomplish the task safely and did not need assistance of the other available crewmember." To support its argument, Hilcorp points to Delahoussaye's deposition testimony, which concludes: "Q. [I]f you felt that it was dangerous for you to do this that night by yourself, you could have gotten somebody else to go with you? A. Yeah." Rec. Doc. 19-2 at 54–55.

While Delahoussaye's statements and experience could supersede his employer's policy provisions, the unseaworthiness threshold is reasonable fitness for the task. It is unclear if MS. VANESSA was reasonably fit at the time of the allision by being improperly or insufficiently staffed. In minimal fashion, Delahoussaye presents a genuine issue of material fact. Summary judgment relative to vessel unseaworthiness is denied.

**3.  Limitation of Liability**

With the first limitation step addressed, the Court turns to the second, asking if Hilcorp can limit its liability as a matter of law, in light of possible findings of negligence or unseaworthiness. Under the Limitation of Liability Act, a shipowner can limit its liability to "the value of the vessel and pending freight" where it lacked privity or knowledge. 46 U.S.C. § 30523. The Fifth Circuit has described privity as personal participation in the negligent action or unseaworthy condition. *Pennzoil Producing Co. v. Offshore Exp., Inc.*, 943 F.2d 1465, 1473 (5th Cir. 1991) (citation omitted). On the other hand, knowledge for a corporate shipowner "is judged not only by what the corporation's managing officers actually knew, but also by what they should have known with respect to conditions or actions likely to cause the loss." *Id.* at 1473–74 (citation omitted). "Generally, a finding of negligence indicates complicity in the cause of the accident sufficient to make limitation unavailable." *Brister*, 946 F.2d at 356. However, where the negligence involves a mere mistake of navigation, "the shipowner is not precluded from the limitation of liability." *Id.* (quotation omitted). Further, a finding of unseaworthiness makes limitation of liability even less likely, particularly if the condition "exists due to equipment that is defective at the start of a voyage, and the defects can be discovered through the exercise of reasonable diligence." *In re Omega Protein, Inc.*, 548 F.3d at 372. With a burden shift at this stage, the limitation petitioner "must prove it had no privity or knowledge of the unseaworthy conditions or negligent acts." *Trico Marine Assets Inc. v. Diamond B Marine Servs. Inc.*, 332 F.3d 779, 789 (5th Cir. 2003).

In this debate over Delahoussaye's navigational errors, a return to his primary caselaw source is instructive. In *In re Omega Protein, Inc.*, the Fifth Circuit affirmed both the district court's findings that the shipowner was 50% negligent for its allision with an unilluminated platform and that the shipowner was still due a limitation of liability because of the navigational error. *In re Omega Protein, Inc.*, 548 F.3d at 371. Noting that the district court found a well-trained

15

pilot and a seaworthy vessel, the appellate court determined the negligent acts of the vessel captain limited the shipowner's liability. *Id.* at 372–73.

Although superficially a favorable result for Hilcorp, the facts here are distinguishable from *In re Omega Protein, Inc*. Hilcorp contends that "the allision in question was the result of pure navigational mistake(s) on the part of an experienced, fully trained and competent vessel operator." Rec. Doc. 19-1 at 17. Nonetheless, as previously discussed, there is a genuine issue of material fact as to the illumination of the allided-with wellhead. Unlike in *In re Omega Protein, Inc.*, if proven, this condition would create—and not help lift—negligence of the petitioner because of its control over the item. *See* Rec. Doc. 14 ("Hilcorp Energy Company was the owner. . . of a structure located in the South Pass Block 24 in Venice, Louisiana bearing State Lease #2484, Well #20, Serial #80774.").

Further, as Delahoussaye's tasks were performed in possible violation of Hilcorp's safety policy, there are genuine questions of material fact as to the unseaworthiness of the MS. VANESSA. Limitation of liability is less likely following an unseaworthiness finding. This is even more evident in this case because Hilcorp notes a policy possibly at odds with its own safety manual: "It is a Hilcorp policy that operators maintain cell phone or radio contact with other crewmembers when operating a vessel alone at night." Rec. Doc. 19-1 at 3. Based on the statement, Delahoussaye concludes: "Hilcorp admits that it knew or should have known that its buddy system was not being observed and it is not entitled to limitation." Rec. Doc. 23 at 16. As to both the negligence and unseaworthiness claims, genuine issues of material fact exist on the limitation of liability step of the inquiry. Thus, summary judgment is improper as to Hilcorp's limitation of liability.

Accordingly,

16

**IT IS HEREBY ORDERED** that petitioner's motion for partial summary judgment is **DENIED**.

New Orleans, Louisiana, this 11th day of December, 2023

_____

SENIOR UNITED STATES DISTRICT JUDGE